Sister Mary K. **SAMSON**

v.

**The UNITED STATES.**

No. 17–82T.

United States Claims Court.

Jan. 19, 1984.

Thomas Arden Roha, Washington, D.C., for plaintiff. John Holt Myers, Susan L. Flaherty, Williams, Myers & Quiggle, and Brother Peter E. Campbell, Washington, D.C., C.F.X., Conference of Major Superiors of Men, of counsel.

Allan C. Lewis, Washington, D.C., with whom were Acting Asst. Atty. Gen. John F. Murray and Theodore D. Peyser, Washington, D.C., for defendant.

### OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

This is an action by Sister Mary K. Samson ("Sister Mary" or "the plaintiff") for the recovery of internal revenue taxes.[1] The jurisdiction of the court is invoked under the provisions of 28 U.S.C. § 1491(a)(1), *as amended by* section 133(a) of Public Law No. 97–164 (96 Stat. 25, 39–40).

The parties have filed cross-motions for summary judgment. As it appears that the parties are in agreement with respect to the relevant facts, the case can be disposed of on the basis of the pending motions.

For the reasons stated hereafter, it is concluded that the plaintiff is not entitled to recover.

### *The Facts*

Sister Mary is a resident of Denver, Colorado. During the period involved in the present litigation, Sister Mary was—and she still is—a member of a religious order called the Sisters of St. Joseph of Carondelet (which, for the sake of convenience, will usually be referred to hereafter in the opinion as "the Order"). Sister Mary first joined the Order and took her first vows on September 11, 1974. She took her final vows as a member of the Order on October 22, 1977.

Sister Mary received the A.B. degree in Speech Pathology from Fontbonne College in 1971, before she joined the Order. Fontbonne College is sponsored by the Order

---

1. The complaint was filed as a petition in this court's predecessor, the United States Court of Claims.

and is located in St. Louis, Missouri. Sister Mary received her master's degree in Speech Pathology from St. Louis University in 1976.

While studying for the graduate degree, and immediately thereafter, Sister Mary pursued an internship in Speech Pathology with the Veterans Administration Hospital in Jefferson Barracks, Missouri. The internship lasted from October 1975 through December 1976.

As a member of the Order, Sister Mary was, at all relevant times, under vows of obedience, poverty, and chastity.

The Order is a religious order of the Roman Catholic Church. The headquarters of the Order are located in St. Louis, Missouri. The Order is exempt from federal income tax.

All members of the Order are under vows of obedience, poverty, and chastity. The Order maintains all of its members, regardless of the nature of their services and regardless of any compensation which is received by reason of their services. Accordingly, the Order maintains Sister Mary—as it does all of its other members—by providing her with food, shelter, medical care, and the like.

Within the Roman Catholic Church, "the religious" are those priests, sisters, and brothers who are members of religious orders and who are under vows of obedience, poverty, and chastity. The relationship of the religious to the church and to their respective religious orders is provided for in Canons 487–681 of the *Codex Iuris Canonici*. Canon 487 provides as follows with respect to the nature of the life of the religious:

> The religious state, that is, the firmly established manner of living in community, by which the faithful undertake to observe, not only the ordinary precepts but also the evangelical counsels, by means of the vows of obedience, chastity, and poverty, must be held in honor by all.

The vows of obedience, poverty, and chastity establish a juridical bond between the individual religious and his or her religious order. By professing and living the vow of poverty, the individual religious divests himself or herself of the administration of property and of income from the services rendered. Canon 580 directs that after the vow of poverty is taken, whatever an individual religious acquires by work or by being a religious is acquired for his or her religious order. Under Canon 502, the members of religious orders are under the authority of the superiors of their respective orders and, ultimately, under the authority of the Pope.

Sister Mary has been under vows of obedience, poverty, and chastity throughout her membership in the Order, including the period that is involved in the present litigation. The vow of obedience requires that she obey the commands of her religious superiors in pursuing the religious mission of the Order. The vow of poverty requires that any income which is generated as a result of Sister Mary's activities is the property and the income of the Order.

It has been mentioned earlier in the opinion that Sister Mary holds a bachelor's degree and a master's degree in Speech Pathology. During the latter part of the year 1976, she became aware of an opening at St. Louis County Hospital in which she could use her training as a speech pathologist to minister to the sick and the needy. St. Louis County Hospital is operated by the Department of Community Health and Medical Care of St. Louis County, Missouri. Sister Mary inquired of her religious superiors as to whether she should apply for the vacant position, and she was directed to submit an application. Sister Mary thereupon submitted an application for the position.

On her application, Sister Mary clearly disclosed that she was a religious and was a member of the Order.

The position for which Sister Mary applied was a civil service position entitled Speech Therapist, job classification No. 1390. The appointing authority was vested in an official of the Department of Community Health and Medical Care of St. Louis County. The initial annual salary of the

position (Range 25, Step A) was $11,321.44 in 1977.

The appointing procedure for a civil service position, such as that of Speech Therapist, with the Department of Community Health and Medical Care involved the filing by an individual of an application and obtaining favorable interviews with the staffs of St. Louis County's Division of Personnel and the county's Department of Community Health and Medical Care. The final decision regarding the employment of an individual to fill the position was made by an appointing official within the Department of Community Health and Medical Care, or his designee.

During Sister Mary's interviews with hospital officials in connection with her application, and during her subsequent tenure at St. Louis County Hospital pursuant to her appointment, she was customarily referred to as "Sister Mary."

Following her interviews and the consideration of her application by county officials, Sister Mary received from the official with the appointing authority an offer of the position of Speech Therapist on the staff of the St. Louis County Department of Community Health and Medical Care, for service at St. Louis County Hospital. Sister Mary informed her religious superiors about the receipt of the offer, and she was directed to accept the offer and to submit a "mission form" to the Order's Provincial Superior. Sister Mary submitted the form; and, pursuant to it, she received formal · direction to pursue the mission of the Order as Speech Therapist on the staff of the St. Louis County Department of Community Health and Medical Care.

Sister Mary worked for the St. Louis County Department of Community Health and Medical Care during the period from January 10, 1977, through May 25, 1977. She resigned her position at the end of that period, with proper notice, to accept an appointment elsewhere.

The contract or agreement between St. Louis County and Sister Mary contemplated that she personally perform all the services and duties of the position of Speech Therapist.

There was no contract or agreement between St. Louis County and the Order with respect to the services of Sister Mary. The county, of course, is not associated with the Order or with the Roman Catholic Church.

While working at St. Louis County Hospital, Sister Mary's services included the diagnosis, evaluation, and treatment of patients suffering from speech disorders. She taught, trained, and assisted individuals to overcome speech defects, and she promoted language development for individuals with such problems. The patients included persons suffering from stroke, trauma, accident, and the like.

Sister Mary performed her services as Speech Therapist under the immediate supervision of county officials.

The position of Speech Therapist held by Sister Mary at St. Louis County Hospital was available to any qualified individual, regardless of age, sex, or religious or nonreligious beliefs.

While working for St. Louis County, Sister Mary received, in addition to salary, employee benefits, including holiday pay, sick leave, health insurance, and the like. Sister Mary elected voluntarily to participate in the Blue Cross-Blue Shield Medical Insurance Plan, and St. Louis County paid for this insurance.

During her period of service for St. Louis County, the county Department of Community Health and Medical Care made salary payments to Sister Mary in the total amount of $4,330.03 as compensation for her services. These payments (net of deductions) were made in the form of checks payable to Sister Mary K. Samson. As the checks were received, Sister Mary immediately endorsed them, in their entirety, over to the Order. This was in accordance with her vows of obedience and poverty.

The Order, separate and distinct from the checks which Sister Mary endorsed over to the Order, maintained Sister Mary throughout her period of service with the St. Louis County Department of Community Health

and Medical Care, by providing her with food, shelter, medical care, and the like. As a matter of economic reality, Sister Mary was dependent upon the Order, which maintained her, and not upon the St. Louis County Department of Community Health and Medical Care.

As previously stated, checks totaling $4,330.03 (less deductions), made payable to Sister Mary K. Samson, were issued to Sister Mary by the St. Louis County Department of Community Health and Medical Care for her services as Speech Therapist in 1977. The deductions included withholdings in the total amount of $250.58 under FICA and income tax withholdings totaling $158.01. These amounts were paid over by St. Louis County to the Internal Revenue Service.

In her federal income tax return for 1977, Sister Mary sought a refund of the $158.01 withheld for income tax. This refund was made to her by the Internal Revenue Service in due course.

On or about April 15, 1981, Sister Mary timely filed a claim for the refund of the $250.58 that had been withheld by St. Louis County in 1977 under FICA. This claim was denied by the Internal Revenue Service on September 12, 1981.

The claim asserted by the plaintiff in the present case is for the $250.58 that was not refunded by the Internal Revenue Service, plus statutory interest.[2]

### Discussion

The question involved in this case is whether the services performed by the plaintiff in 1977 for a governmental unit of St. Louis County, Missouri, in a civil service position constituted "employment," within the meaning of that term as used in FICA, the plaintiff being subject to vows of obedience and poverty as a member of the Order and, in accordance with such vows, having

endorsed all pay checks from the county, in their entirety, over to the Order.

The parties have not cited any previous court decision that provides a precedent helpful to the court in deciding the question just stated.

During the year 1977, FICA imposed on every individual a tax equal to 4.85 percent of the wages received by the individual "with respect to employment (as defined in section 3121(b)." 26 U.S.C. § 3101(a) (1976).

The plaintiff, in contending that she was not subject to the FICA tax during the period in issue here, asserts in her brief that "[t]his case can be decided on the basis of one clear and unambiguous Internal Revenue Code * * * subsection and the Treasury Regulations thereunder." The plaintiff cites in this connection 26 U.S.C. § 3121(b)(8)(A) and 26 C.F.R. § 31.-3121(b)(8)–1(d).

The statutory provision relied on by the plaintiff is part of the congressional definition of the term "employment," as used in FICA. This term is defined generally in 26 U.S.C. § 3121(b) as meaning "any service, of whatever nature, performed * * * by an employee for the person employing him * * *." This statement is followed by a number of exceptions, one of them stating that the term "employment" does not include "service performed * * * by a member of a religious order in the exercise of duties required by such order * * *." 26 U.S.C. § 3121(b)(8)(A).

The administrative regulation cited by the plaintiff is 26 C.F.R. § 31.3121(b)(8)–1(d), which provides as follows:

(d) Service in the exercise of duties required by a religious order. Service performed by a member of a religious order in the exercise of duties required by such order includes all duties required of the member by the order. The nature or

---

2. The Order has elected, in accordance with 26 U.S.C. § 3121(r), to have the insurance system established by Title II of the Social Security Act "extended to services performed by its members in the exercise of duties required by such order." With respect to its members, including

the plaintiff, the Order has paid the FICA tax on the value of the housing, food, and other items furnished by the Order in connection with the maintenance of its members. Those tax payments are not involved in the present litigation.

extent of such service is immaterial so long as it is service which he is directed or required to perform by his ecclesiastical superiors.

Relying on the language previously quoted from the statute and regulations, the plaintiff's brief asserts that she "meets the tests posed by the statute and the regulations, as she was and is a member of a religious order, and she was during the period in issue directed to perform services in pursuit of the mission of the Order by her ecclesiastical superiors."

The plaintiff's argument is superficially appealing until it is realized that, from the standpoint of reality, the Order could not *require* or *direct* the plaintiff to perform the duties of the civil service position of Speech Therapist, job classification No. 1390, for the St. Louis County Department of Community Health and Medical Care. Actually, the Order did not have any authority or responsibility in connection with the selection of the person who was to fill and perform the duties of that position. Standing alone, a purported requirement or directive by the Order that the plaintiff take over and perform the duties of the civil service Speech Therapist position with the St. Louis County Department of Community Health and Medical Care would have been absolutely meaningless.

The authority and responsibility with respect to determining who would fill and perform the duties of the Speech Therapist position were vested in an appointing official of the St. Louis County Department of Community Health and Medical Care, acting on the recommendations of other county officials and in accordance with the regulations of the St. Louis County Civil Service Commission. The extent of the Order's participation in the matter was merely to determine whether the plaintiff should apply and compete for the position and, later, to determine whether the plaintiff should accept the position when it was offered to her by the appointing official of the county, after her application had been considered and she had undergone successful interviews with county officials.

In essence, the Order's role was to grant (or deny) authorizations to the plaintiff with respect to her desire to participate in the county's appointing process. The Order could not—and did not—issue any mandatory requirement or directive controlling the appointing process.

It is concluded that the services performed by the plaintiff in the civil service position of Speech Therapist with the St. Louis County Department of Community Health and Medical Care in 1977 were not performed by her "in the exercise of duties *required*" by the Order (emphasis supplied). Accordingly, such services were not excluded from the definition of "employment" in FICA.

It necessarily follows that, as the plaintiff was an employee of the St. Louis County Department of Community Health and Medical Care performing services for her employer, the wages received for such services were subject to the FICA tax.

*Conclusion*

The court concludes, on the basis of the pleadings, the affidavits, and the other materials submitted by the parties, that there is no genuine issue as to any material fact in this case, and that the defendant is entitled to a judgment as a matter of law.

The plaintiff's motion for summary judgment is therefore denied, and the defendant's cross-motion for summary judgment is granted.

The complaint will be dismissed.

IT IS SO ORDERED.