FRIEDMAN, Circuit Judge,
dissenting.
I conclude that under the governing provisions of the Internal Revenue Code of 1954 (Code) and the implementing Treasury Regulations, Sister Mary was not subject to Federal Insurance Contributions Act (FICA) taxes on the salary she received from the St. Louis County Hospital (Hospital) for working there as a speech therapist, as her religious order (the Order) directed her to do.
The Code subjects to FICA (Social Security) taxes earnings paid “with respect to employment.” I.R.C. §§ 3101, 3111 (1982). Employment is defined in pertinent part as “any service, of whatever nature, performed ... by an employee for the person employing him.” I.R.C. § 3121(b). Section 3121(b)(8)(A) excludes from the definition of employment “service performed ... by a member of a religious order in the exercise of duties required by such order ____”
The parties conceded that before accepting the position as speech therapist with the Hospital, Sister Mary (1) was directed by her Order to apply for the position and (2) after being offered the position, .was directed by her Order to accept it. The United States also concedes that there is no legally significant difference between the terms “directed” and “required.” Under the foregoing Code provisions, the relationship between Sister Mary and the Hospital was not one of employment for FICA purposes, since it involved service that Sister Mary was “required” by her Order to perform. On the face of the Code, therefore, Sister Mary was not subject to FICA taxes upon the salary she received for performing those services.
The court holds, however, that the Code does not mean what it says. It interprets “duties required by such order” to mean duties the Order has the power to compel the member to perform. As the Claims Court pointed out:
from the standpoint of reality, the Order could not require or direct the plaintiff to perform the duties of the civil service position of Speech Therapist ... for the [Hospital]____
In essence, the Order’s role was to grant (or deny) authorizations to the plaintiff with respect to her desire to participate in the county’s appointing process. The Order could not — and did not — issue any mandatory requirement or directive controlling the appointing process.
Samson v. United States, 4 Cl.Ct. 325, 329 (1984) (emphasis in original).
In effect, the court holds that for services performed by a member of a religious Order to be exempt from FICA taxes, the relationship between the Order and its member with respect to the services must be that of employer and employee.
There are two answers to this theory. First, that is not what the statute says. It uses the unambiguous phrase “required by the order.” If the Order requires a member to perform particular service, as Sister Mary’s Order required her to do in this case, the Code exempts the wages paid for such service from FICA taxes because such service is not considered to be “employment.”
Second, and equally compelling, is the statement in the Treasury Department Regulation implementing this provision which, after stating that “[s]ervice performed by a member of a religious order *888 ... includes all duties required of the member by the order,” provides:
The nature or extent of such service is immaterial so long as it is a service which he is directed or required to perform by his ecclesiastical superiors.
Treas.Reg. § 31.3121(b)(8)-l(d) (West 1984).
Thus, under the governing regulation the “nature or extent” of the member’s service is “immaterial.” It is immaterial whether the member performs the service for the Order or for an outside agency, as in this case. The sole issue is whether “it is service which he is directed or required to perform by his ecclesiastical superiors.”
If, as the court holds, the critical inquiry in such a case is whether the service was performed as part of employment by the Order or by an outside entity, one would think that the regulation would have explicitly so stated, as it easily could have done. If that had been the standard the Treasury Department intended, it certainly would not have said that “[t]he nature ... of such service is immaterial” in determining whether it constitutes employment subject to FICA taxes.
Section 3121(b)(8)(A) was added to the Code by the Social Security Act Amendments of 1950, ch. 809, 64 Stat. 477. Most of the legislative history of that provision merely tracks the statutory language, and thus provides no aid in interpreting the language. Even the one item that appears to provide some support for the government’s position (upon which the government, but not the court, relies), does not justify the court’s interpretation of the Code.
Both committee reports stated:
The exception contained in subparagraph (A) applies to the performance of services which are ordinarily the duties of ... members of religious orders.
S.Rep. No. 1669, 81st Cong., 2d Sess. 138, reprinted in 1950-2 C.B. 302, 342; see H.R.Rep. No. 1300, 81st Cong., 1st Sess. 130 (1949), reprinted in 1950-2 C.B. 255, 282.
The government has not shown, however, that in 1950 the performance of services for entities outside the Order, such as those Sister Mary was required to perform in this case, was not “ordinarily the duties of ... members of religious orders.” Without such a showing this single sentence from the committee reports is too slim a reed upon which to build an exemption from what I view as the unambiguous language of the Code.
The court cites a number of revenue rulings from which it derives the “general rule ... that where a member of a religious order enters into an employment relationship with a third party who is unrelated to the order, but who looks to the member rather than to the order for the performance of the duties, the member’s earnings are subject to FICA taxation, even though the order directed the member to apply for the position and to perform the duties thereof.” These revenue rulings do not establish this “general rule.” The first revenue ruling to deal with the specific statute involved in this case announced the following principle:
In order for the employment of a member of a religious order to constitute the exercise of duties required by such order within the meaning of the Employment Tax Regulations, the services must be of the type that are ordinarily the duties of the order and must be performed by the member as part of the duties for and on behalf of the religious order as its agent.
Rev.Rul. 76-323, 1976-2 C.B. 18, 19; accord Rev.Rul. 81-267, 1981-2 C.B. 196; Rev.Rul. 79-132, 1979-1 C.B. 305.
One of those revenue rulings stated that “[o]rdinarily, a member is performing services as the agent of the religious order only if the order is engaged in the performance pf the services as a principle. Ordinarily an order is not engaged in the performance of services as a principal where the legal relationship of employer and employee exists between the member and the third party with respect to the performance of such services.” That ruling involved the services of a plumber and a construction *889 worker, one of whom lived outside the religious order and paid for his housing out of his earnings before turning the remainder over to the order. The ruling itself suggested that the result might be different in a case involving a nurse and a hospital. See 1976-2 C.B. at 19 (discussing Rev.Rul. 68-123, 1968-1 C.B. 35).
The latter revenue ruling, which the court says “is clearly distinguishable on its facts,” held that a nurse who was a member of a religious order was not subject to income tax on the salary she received for nursing services which the order directed her to perform at a hospital. Rev.Rul. 68-123, 1968-1 C.B. 35. Although a subsequent ruling distinguished Rev.Rul. 68-123 on the ground that the nurse was under the supervision and control of the Order in performing the services, Rev.Rul. 83-127, 1983-2 C.B. 25, there is nothing in Rev.Rul. 68-123 to indicate that that was the basis of the ruling. Rev.Rul. 68-123 does not even mention whether the hospital was religious or secular.
The fact that the Commissioner has taken inconsistent positions in his rulings weakens their persuasiveness. St. Louis Bank for Cooperatives v. United States, 624 F.2d 1041, 1051 (Ct.Cl.1980); see Morton v. Ruiz, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974). In any event, since these administrative interpretations are inconsistent with the statutory language, they are entitled to little weight. Securities and Exchange Commission v. Sloan, 436 U.S. 103, 117-19, 98 S.Ct. 1702, 1711-12, 56 L.Ed.2d 148 (1978); see United States v. Vogel Fertilizer Co., 455 U.S. 16, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982). Furthermore, the revenue rulings fail to explain convincingly why the Commissioner read additional requirements (such as ordinary service and agency) into the clear statutory language, a failure that still further weakens any deference due those decisions. St. Louis Bank, 624 F.2d at 1051 (citing Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)).
It may well be that, as a matter of policy, the salary Sister Mary received in this case should be subject to FICA taxes. Congress, however, has not so subjected them. I do not think it is appropriate for the court to extend the statute beyond what Congress provided.
If Congress wishes to change the law to achieve the result the court reaches, it may do so. The Commissioner could amend his regulations to provide explicitly that service by a member of an Order is employment only if the member is subject to the control of the Order in performing the services. As the statute and the regulations now read, however, I see no basis for subjecting Sister Mary’s earnings from the Hospital to FICA taxes.